## BRAND v. CLEMENTS.

When cotton has been produced by the conjoint use of exempted property and supplies furnished by the head of the family and not connected with such property, the whole crop so produced is not subject to an individual debt of the head of the family. Only such an aliquot part as, under equitable principles, may be ascertained to be the debtor's interest can be subjected; and where the evidence does not distinctly show amounts and values from which such part may be ascertained, a verdict finding the whole not subject must stand.

The trial judge did not err in dismissing the certiorari.

Argued October 7, — Decided October 29, 1902.

Certiorari. Before Judge Russell. Gwinnett superior court. March term, 1902.

*O. A. Nix*, for plaintiff. *Juhan & McDonald*, for defendant.

LITTLE, J. An execution in favor of Brand was levied on certain property of Clements, the defendant in fi. fa., the property being described in the levy as "eight or ten acres of cotton now in the field and unpicked." The defendant filed an affidavit of illegality, alleging that the property levied on was exempt from levy and sale, as being the proceeds of certain personal property set apart as an exemption to him as the head of a family. After a trial of the issues so raised, an appeal was taken to a jury in the justice's court, and on the trial of the appeal the jury rendered a verdict finding the property not subject. The plaintiff in execution subsequently sued out a writ of certiorari, and on the hearing in the superior court the judge overruled and dismissed the same. The plaintiff excepted to this ruling. The errors alleged in the petition for certiorari were that the verdict was contrary to law and evidence. It appears from such evidence that theretofore there had been set apart, as an exemption to Clements, thirty bushels of corn, a wagon, some shucks, four hogs, and a small amount of household and kitchen furniture. The wife of Clements testified, that she and her children made the cotton levied on, and that the exempted property was used in making the crop; that Clements himself worked in the crop while he and his family consumed the provisions which had been set apart; that in so doing two of the hogs mentioned in the schedule were killed, two were sold, and the proceeds of the sale were used to purchase corn which was used on the

farm; that the corn exempted lasted only until March; that during the planting season Clements by outside labor procured the cottonseed which was planted; that while he worked some in the cultivation of the crop he did outside work to some extent, using the proceeds of this labor for his family; that, in addition to this, he procured additional supplies from a merchant, the purchase-price of which was secured by mortgage on the crop, and had been paid. The sum of the evidence for the plaintiff in execution was that Clements had done a good deal of outside work, for which he received money with which he purchased supplies for his family, and that he had also been furnished with supplies for his family on credit from outside sources.

Under the contentions of the parties the legal question arises, whether a crop of cotton partially raised by the use of exempted personalty is, because of such use, itself exempt. Our Civil Code, § 2848, declares that all produce, rents, or profits arising from homesteads in this State are likewise exempt; and inasmuch as exempted personalty stands in all respects on the same footing, under our law, as a homestead, and by the statute seems to be included in the latter term, the declaration of the code applies directly to property which has been set aside as exempt. But it is apparent, under the evidence in this case, that the cotton levied on and claimed to be exempt was not entirely the product or profits of the exempted personalty. The evidence clearly establishes that it was only partially the product arising from such use. While it is very clear that if, in the production of the cotton, only exempted personalty or its proceeds was used, it would not be subject, the conclusion is not the same when the proceeds of property exempt and property not exempt were jointly used in its production. In the case of *Kupferman* v. *Buckholts*, 73 *Ga.* 778, it was distinctly ruled that where personalty was set apart as exempt, and it was subsequently used on rented land in making a crop, such crop, after payment of the rent, would not be subject to the prior debts of the head of the family, although there was an increase in the amount of the crop over the amount of the exemption used in making it. In laying down this legal proposition, however, Chief Justice Jackson confined its application to cases only where the product of the land arose strictly from the use of exempted personalty; for he says, in the opinion by which he supports the proposition: "We

do not say that if the head of a family has property of his own in-dividual right — either land or personalty — wherewith, in conjunction with that exempted, he makes increase in the shape of other property, justice and equity would not require that a portion thereof should go to his creditors." The reported facts in the case of *King* v. *Skellie*, 79 *Ga.* 147, show that personal property which had been set apart as exempt for the family of King, who was a debtor of Skellie, was used in producing a crop on land which King had acquired subsequently to the setting apart of his exemption. When the crop so raised was levied on to enforce the execution of Skellie, King claimed it as the proceeds of exempt property. Skellie tendered an equitable issue seeking to subject a portion of it, which he alleged equitably belonged to King as an individual. This court recognized that this right existed, but ruled that Skellie could not subject to his execution any portion of the crop greater than the value of the rent of the land on which it was made. Again, in *Vining* v. *Officers*, 82 *Ga.* 222, an execution was levied on land which was claimed as being a homestead of the debtor and therefore exempt. It appeared that the land was purchased in part with funds derived from certain policies of insurance, the claimant's interest in which had been set aside as exempt, but that in purchasing the land the sum of $109.03 more than "the exemption estate" was invested in the land. The trial judge instructed the jury to find the land subject to the extent of the amount of the excess. It was ruled by this court, however, that such an instruction was erroneous; that the whole property was not subject for any amount, but only about one sixth of the property could be made subject. Subsequently, under practically the same evidence, the case was tried again, and resulted in a verdict finding thirty-eight sixty-fifths of the property subject to the execution. In passing on the exceptions taken to this verdict this court ruled (86 *Ga.* 127) that only the aliquot part of the head of the family, unaffected by the homestead in the property levied on, was subject to the execution. The effect of the rulings made in the cases cited is to recognize two propositions: first, where a crop is produced by the conjoint use of property which is exempt, and that which belongs to the debtor individually, the whole of it can not be made subject to the claim of a creditor of the head of the family individually; second, that in such a case only an aliquot

part of the crop which represents equitably the interest of the debtor, unaffected by the homestead, could be legally subjected. While, as we have said, before, the evidence showed that the debtor, Clements, did contribute towards the production of the cotton some amounts of money, and some supplies which were not included in and did not arise from the exempted property, yet the amount and value of the property so contributed can not be definitely ascertained from the evidence. We have seen under such circumstances that the whole crop is not subject to the creditor's claim, but only the aliquot part of the debtor's interest therein which is unaffected by the homestead can be made subject. This can only be done by showing what aliquot part the debtor is equitably entitled to; and if this is not done, then no part of the crop can lawfully be found subject. *King* v. *Skellie*, supra. There being in the record no evidence showing either the value of the cotton which was levied on while ungathered, or any definite amount of money, or supplies of a definite value, contributed by the debtor towards the production of the crop, it follows that a verdict finding the cotton not subject was sustained by the evidence, and authorized by law. There was no error in dismissing the certiorari.

*Judgment affirmed. All the Justices concurring, except Lumpkin, P. J., absent.*