29995. ATLANTA BAKING COMPANY *v.* POSTAL
TELEGRAPH-CABLE CO.

DECIDED APRIL 23, 1943.

A. G. Cleveland Jr., Hirsch, Smith, Kilpatrick, Clay & Cody. for plaintiff. Crenshaw, Hansell & Gunby, for defendant.

STEPHENS, P. J.   The Atlanta Baking Company brought suit for damages against the Postal Telegraph Company, and alleged that on August 12, 1941, the Dobry Flour Mills Inc. of Yukon, Oklahoma, filed with the defendant at that city, a telegram addressed to the plaintiff at Atlanta, Georgia, paying the regular rate for the transmission thereof, which telegram read as follows: "Absolutely best possible 7500 barrels Bestwest bulk 5.20   2500 barrels Dobig. 5.10 subject confirmation." The petition further alleged that when this message was received by the plaintiff the figures "5.25," through the negligence of the defendant and its agents, had been substituted for "5.20," that the plaintiff had engaged in negotiations with the sender of this telegram before the transmission thereof, and pursuant to the arrangement agreed on in these negotiations the offer contained in the telegram was for the purpose of "confirmation," that is, "acceptance" by the plaintiff; that this message as filed with the defendant in Yukon constituted an offer by the Dobry Flour Mills Inc. to sell to the plaintiff 7500 barrels of Bestwest Bulk flour at $5.20 per barrel, and upon acceptance of this offer by the plaintiff a binding contract would have resulted; that as a result of the negligence of the defendant in transmitting this message a higher price for the flour was substituted for the price actually given in the message filed with the defendant and the plaintiff did not accept the offer, but the plaintiff would have accepted it had the message been correctly transmitted, such flour being necessary to the operation of the plaintiff's business; that the plaintiff was accordingly prevented from receiving the true offer of the sender of the telegram, which offer the plaintiff would have accepted; that on learning of the error in the telegram as received the plaintiff made every possible effort to purchase flour at $5.20 a barrel to fill its current needs, and thus decrease its damage resulting from the negligence of the defendant, but when the plaintiff learned of the error in the telegram the price of flour of the quality of "Bestwest bulk" had advanced to $5.35 a barrel, and on August 20, 1941, when the plaintiff purchased 5000 barrels of flour of the same quality from another milling company at $5.35 a barrel, the price of flour of this quality had not fallen below $5.35 a barrel; that on October 10, 1941, the plaintiff purchased from the Chick-

asha Milling Company in Oklahoma an additional 10,000 barrels of flour of the same quality at $5.40 a barrel, which was the market price on that date, the market price having remained about $5.35 a barrel since August 20, 1941; that the plaintiff is engaged in the business of manufacturing bread and other products of like nature, and the purchases of flour as above alleged were necessary in the regular and normal operation of its business, and that as a result of the negligence of the defendant the plaintiff has suffered damages in the amount of $1250, or 15 cents per barrel on 5000 barrels of flour and 20 cents a barrel on 2500 barrels of flour, which is the amount by which the price at which the plaintiff purchased 7500 barrels of flour exceeded the price stated in the offer made in the telegram as originally filed.

The defendant demurred to the petition on the ground that no cause of action was set out. The judge sustained the demurrer and the plaintiff excepted.

Assuming that the message contained in the telegram as originally filed with the defendant was an unqualified offer by the flour mill in Oklahoma to sell to the plaintiff 7500 barrels of "Bestwest bulk" flour at $5.20 a barrel, which offer could be accepted or rejected by the plaintiff and if accepted would constitute a complete contract between the sender of the telegram and the plaintiff for the purchase and sale of this flour, under the facts alleged the plaintiff would not be entitled to recover of the defendant as damages caused by its negligence the difference between the price of 7500 barrels of this flour at $5.20 a barrel, the correct offer by the sender of the message, and the increased price paid by the plaintiff for this same amount of flour eight days later; the plaintiff contending that had the offer been correctly transmitted it would have accepted the same and purchased the 7500 barrels of flour at $5.20 a barrel, thus saving to it the difference between that price and the price at which it subsequently bought such flour. Such damages are entirely speculative, and too remote to be recoverable as compensatory damages resulting from the negligence of the telegraph company in the transmission of an unqualified offer to sell, whereby the merchandise was offered to the plaintiff at a price in excess of the price contained in the correct offer. There was no finished contract between the sender of the telegram and the plaintiff but only a proposal to sell on certain terms. It took the acceptance of this pro-

posal by the plaintiff to make a contract. The plaintiff might or it might not have accepted this proposal or offer to sell had the correct price, as stated in the message when it was originally filed with the defendant in Oklahoma, been transmitted. Therefore the "failure of the telegraph company did not cause the breach of a consummate contract," but "it only prevented one that might or might not have been made." *Richmond Hosiery Mills* v. *Western Union Telegraph Co.*, 123 *Ga.* 216, 223 (51 S. E. 290).

It is true that the plaintiff alleged that it would have accepted the offer contained in the telegram as originally filed in which the flour was offered at $5.20 a barrel, and that it refused to accept this offer because the message as delivered to it in Atlanta erroneously offered the flour at $5.25 a barrel. The plaintiff can not now legally contend that it would have accepted this offer if it had been correctly transmitted and had quoted the flour at $5.20 a barrel. The telegram was delivered to the defendant in Oklahoma for transmission to the plaintiff in Atlanta on August 12, 1941, and this allegation of the plaintiff was made in this suit filed February 20, 1942. It is exceedingly speculative, as a basis for damages, to say that if an offer to sell flour at $5.20 had been received, instead of the incorrect offer at $5.25 a barrel, the plaintiff would have accepted it. The plaintiff might or might not have accepted this offer. See *Richmond Hosiery Mills* v. *Western Union Telegraph Co.*, supra, and cit. See also *Western Union Telegraph Co.* v. *Watson,* 94 *Ga.* 202 (21 S. E. 457, 47 Am. St. R. 151); *Clay* v. *Western Union Telegraph Co.*, 81 *Ga.* 285 (6 S. E. 813, 12 Am. St. R. 316); Beatty Lumber Co. *v.* Western Union Telegraph Co., 52 W. Va. 410 (44 S. E. 309).

Besides, it does not appear from the petition that, on the receipt by the plaintiff of the telegram containing the incorrect offer to sell the flour at $5.25 à barrel, the plaintiff made any effort to purchase flour elsewhere at $5.20 a barrel but could not do so, but the plaintiff alleges that it would have accepted the offer at $5.20 a barrel, and that sometime later when it discovered that there had been a mistake by the telegraph company in the price per barrel contained in the telegram the price of flour had advanced to $5.35 a barrel and that it purchased 5000 barrels on August 20, 1941, at that price. From all that appears from the petition the plaintiff might have been able to obtain flour of the same quality from other

milling companies on the date it received the message containing the error, the subject matter of the present suit, at $5.20 a barrel. It does not appear that the plaintiff made any effort to ascertain whether it could or could not do so.

The petition did not set out facts authorizing the recovery of the damages alleged and the court did not err in sustaining the demurrer. *Judgment affirmed. Sutton and Felton, JJ., concur.*